# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**William R.,**
**Petitioner Below, Petitioner**

**vs)   No. 18-0385** (Ohio County 18-C-33)

**Donnie Ames, Superintendent,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

**FILED**

**June 17, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner William R.,[1] pro se, appeals the March 28, 2018, order of the Circuit Court of Ohio County denying his petition for a writ of habeas corpus. Respondent Donnie Ames, Superintendent, Mt. Olive Correctional Complex,[2] by counsel Shannon Frederick Kiser, filed a summary response in support of the circuit court's order. Petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In the summer of 2005, petitioner lived with his girlfriend and her children, one of whom was ten-year-old M.E. ("child"). Due to an allegation that petitioner offered the child money to

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]Since the filing of the appeal in this case, the superintendent at Mount Olive Correctional Complex has changed and the superintendent is now Donnie Ames. The Court has made the necessary substitution of parties pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure. Additionally, effective July 1, 2018, the positions formerly designated as "wardens" are now designated "superintendents." *See* W.Va. Code § 15A-5-3.

1

watch him masturbate, the child was interviewed at a child advocacy center. During the interview, the child disclosed that she declined petitioner's offer and that nothing else happened between her and petitioner in her current home. However, the child went on to reveal that, when she lived in Proctor in Wetzel County, West Virginia, petitioner touched her "private part" with his hands inside her underwear "[a] good many" times. No charges were brought against petitioner following the 2005 interview.

In 2011, the child (then approximately sixteen years of age) was appointed a guardian ad litem ("GAL") in an unrelated proceeding. The child told her GAL about her 2005 allegations against petitioner. The GAL contacted law enforcement and a new investigation ensued. In February of 2011, Sgt. Matthew Adams of the West Virginia State Police met with the child and her GAL and conducted an interview of the child. During the interview, the child stated that she and her family moved to Ohio County in approximately 2004 and that petitioner moved into her family home shortly thereafter. The child further stated that, when petitioner moved into her home, he began sexually abusing her. The child claimed that petitioner (1) hid in her closet apparently waiting for her; (2) smelled her underwear; (3) stood over her bed while she was asleep with his pants down; (4) touched her genitalia more than once per week for years; (5) touched her breasts once when she was ten years old; (6) forced her to touch his penis; (7) pulled her into a forced hug and began kissing her neck; (8) would often masturbate in front of her; and (9) asked her to watch him masturbate. The child denied ever having sexual intercourse of any kind with petitioner. When asked whether petitioner "[went] inside of [her] vagina with his hand," the child responded, "[n]ot that I can recall." However, the child confirmed that petitioner placed his hands under her clothes and on her skin.

In January of 2013, the Grand Jury of Ohio County returned an indictment against petitioner charging him with six felonies between August 1, 2005, and July 20, 2006: two counts of first-degree sexual assault (Counts 1 and 3); three counts of sexual abuse by a custodian (Counts 2, 4, and 6); and one count of first-degree sexual abuse (Count 5). Four of the six counts (Counts 1, 2, 3, and 4) included allegations of penetration. Sgt. Adams was the sole witness who testified before the grand jury. Regarding the allegations of penetration, the assistant prosecuting attorney had the following exchange with Sgt. Adams:

Q: Through the course of your investigation, did you determine that sometime between August 1, 2005[,] and July 20th, 2006, . . . [in] Ohio County, West Virginia, . . . that [petitioner] had assaulted [the child] by penetrating her sexual organ with his finger?

A: Yes, ma'am.

Q: And did this – is this the basis for Count 1 of sexual assault in the [f]irst [d]egree contained in the [i]ndictment?

A: Yes, ma'am.

Petitioner subsequently filed various motions seeking to either quash the indictment or dismiss one or more of its counts given the variance between the child's pretrial statements and Sgt. Adams's grand jury testimony regarding penetration. The circuit court denied petitioner's motions by orders entered December 22, 2014, and July 27, 2015. The circuit court found that petitioner failed to prove intentional and willful fraud on the part of the State during the grand jury proceeding and that, absent such fraud, the court was prohibited from assessing and reviewing the grand jury's consideration of evidence in returning an indictment. The circuit court further found that Sgt. Adams' testimony was not misleading because he testified only to what his determination was regarding whether penetration occurred based on his investigation.

The circuit court held petitioner's trial on July 29, 2015. The child testified that, when petitioner lived in her home, they would often be home alone together. The child stated that petitioner began showing a "weird" interest in her puberty and body. The child said that she would find petitioner smelling her underwear and that he offered her $5 to watch him masturbate. The child stated that she once awoke to find petitioner standing over her "with his pants and underwear down" and that petitioner once pulled her into a hug and began rubbing her and that she tried to back away, but "he kept rubbing [her]." During this incident, which the child said occurred after her 2005 interview, petitioner kissed her neck, told her to imagine that he was a boy she had a "crush" on, and pushed his hands under her underwear where he rubbed her genitalia. According to the child's testimony, petitioner went "into" her vaginal area, which she described as "the inside area of the lips." Finally, the child testified that petitioner touched her breasts once while making dinner and commented about how she was "growing up." During cross-examination, the child was questioned regarding her pretrial statements that petitioner never penetrated her genitalia. The child responded that, at the time of her 2011 interview with Sgt. Adams, she "was under a different impression about what the word penetration meant." The child further clarified that petitioner touched her genitalia on only one occasion.

At the conclusion of the State's case-in-chief, petitioner moved for a judgment of acquittal. Petitioner argued that the indictment was based on two incidents of penetration, but that the child testified that petitioner touched her genitalia only once. For that reason, petitioner moved for a judgment of acquittal of one count of first-degree sexual assault and one count of sexual abuse by a custodian. The State agreed that Count 3 (first-degree sexual assault) and Count 4 (sexual abuse by a custodian) should be dismissed and the circuit court granted petitioner's motion accordingly. Petitioner further argued that the evidence was insufficient to prove any penetration beyond a reasonable doubt, which he claimed undermined Counts 1 and 2. The State countered that the child's testimony sufficiently described one act of penetration. The circuit court found that the child's use of the word "into" to describe petitioner's touch was sufficient to allow the jury to decide the merits of the remaining counts requiring penetration and, therefore, denied the remainder of petitioner's motion.

Although petitioner called no witnesses, he introduced medical records showing that he was hospitalized for a period of time during December of 2005 and January of 2006 to establish an alibi defense. Following deliberations, the jury convicted petitioner of all four remaining counts: one count of first-degree sexual assault (Count 1); two counts of sexual abuse by a custodian (Counts 2 and 6); and one count of first-degree sexual abuse (Count 5). By order entered September

22, 2015, the circuit court sentenced petitioner to an aggregate term of thirty-six to eighty years of incarceration.

Petitioner appealed his convictions in *State v. [William R.]*, No. 15-1039, 2017 WL 678854 (W.Va. Feb. 21, 2017) (memorandum decision), arguing, inter alia, that the circuit court erred in failing to dismiss all the charges requiring penetration given the variance between the child's pretrial statements and Sgt. Adams's grand jury testimony regarding penetration. *Id.* at *5. This Court rejected petitioner's argument, finding:

> With regard to petitioner's contention that [Sgt.] Adams' testimony was misleading, we disagree. Before the grand jury, [Sgt.] Adams was asked by the assistant prosecutor whether he had determined, based on his investigation, that penetration had occurred. [Sgt.] Adams testified that he had made that determination. Notably, [Sgt.] Adams did not indicate in any way that the child stated that penetration occurred. Based on petitioner's argument and the record before us, we do not find that [Sgt.] Adams provided misleading testimony about his determination to the grand jury, and we decline to inquire into the evidence before the grand jury further given the lack of willful, intentional fraud.

*Id.* at *6. Accordingly, petitioner's convictions were affirmed. *Id.* at *9.

On January 25, 2018, petitioner filed a petition for a writ of habeas corpus, alleging that his trial attorney provided ineffective assistance by failing to argue (1) that Sgt. Adams's grand jury testimony constituted willful and intentional fraud; (2) that it is impermissible for the State to present only one witness to the grand jury; (3) that petitioner had a brain aneurysm that rendered him unable to control his behavior toward the child; and (4) that the child testified as to prior bad acts, evidence of which was inadmissible pursuant to Rule 404(b) of the West Virginia Rules of Evidence.[3] By order entered March 28, 2018, the circuit court denied the petition without a hearing or appointment of counsel. The circuit court found that, as none of the issues that petitioner argues his trial attorney should have asserted have merit, it did not constitute ineffective assistance for petitioner's trial counsel not to raise those issues.

It is from the circuit court's March 28, 2018, order denying his habeas petition that petitioner now appeals. In syllabus points one and three of *Anstey v. Ballard*, 237 W.Va. 411, 787 S.E.2d 864 (2016), we held:

> 1. "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard;

---

[3]Petitioner further argued that the cumulative effect of the alleged errors denied him a fair proceeding in the underlying criminal case. However, as explained *infra*, we concur with the circuit court's finding that there was no error, and, therefore, the cumulative error doctrine does not apply to this case. *See State v. Trail*, 236 W.Va. 167, 188 n.31, 778 S.E.2d 616, 637 n.31 (2015) (finding that cumulative error doctrine has no application when there is no error).

the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

. . . .

3.    "'A court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief.' Syllabus Point 1, *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973)." Syl. Pt. 2, *White v. Haines*, 215 W.Va. 698, 601 S.E.2d 18 (2004).

In West Virginia, claims of ineffective assistance of counsel are governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires that (1) counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *See* Syl. Pt. 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995) (adopting *Strickland*).

On appeal, petitioner argues that the issues he claims his trial attorney should have asserted have merit and, therefore, trial counsel was ineffective in failing to raise those issues during his criminal case. Respondent counters that, as petitioner's ineffective assistance claim lacks merit, the circuit court properly denied his habeas petition. We agree with respondent and address each issue in turn.

First, petitioner argues that his counsel should have alleged willful and intentional fraud on the part of Sgt. Adams because, "[e]xcept for willful, intentional fraud[,] the law of this State does not permit the court to go behind an indictment to inquire into the evidence considered by the grand jury, either to determine its legality or its sufficiency." Syl., *Barker v. Fox*, 160 W.Va. 749, 238 S.E.2d 235 (1977). "[D]ismissal of [an] indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict or if there is grave doubt that the decision to indict was free from substantial influence of such violations." Syl. Pt. 6, *State ex rel. Pinson v. Maynard*, 181 W.Va. 662, 383 S.E.2d 844 (1989) (Internal quotations and citations omitted.).

In *[William R.]*, we found not only that Sgt. Adams's grand jury testimony failed to constitute willful and intentional fraud, but also that it was not misleading because "Sgt. Adams did not indicate in any way that the child stated that penetration occurred." 2017 WL 678854, at *6. Our ruling in *[William R.]* constituted a final decision on the merits pursuant to Rule 21(a) of the West Virginia Rules of Appellate Procedure. *See In re T.O.*, 238 W.Va. 455, 464, 796 S.E.2d 564, 573 (2017) (finding that a memorandum decision is an adjudication on the merits); *State v. McKinley*, 234 W.Va. 143, 151, 764 S.E.2d 303, 311 (2014) (same). Therefore, this issue was previously and finally adjudicated. Accordingly, we conclude that petitioner may not relitigate the

5

issue in a habeas proceeding. *See Losh v. McKenzie*, 166 W.Va. 762, 764, 277 S.E.2d 606, 609 (1981) (finding that the purpose of a habeas proceeding under West Virginia Code §§ 53-4A-1 to -11 is to enable a defendant to raise any issues "which have not previously been fully and fairly litigated").

Second, petitioner argues that the State's presentation of only one witness improperly prevents the grand jury from considering evidence that is favorable to the defendant. However, the grand jury's function is not to decide guilt, but only to accuse. We explained in *Barker*:

> [The grand jury] is the body entrusted with the power to say when a crime has been committed, and when a prosecution should be begun against the person whom the evidence before them leads them to believe is probably the guilty party. According to our judicial system[,] they are the tribunal representing the people, for the purpose of charging crime and designating the criminal. The evidence that satisfies them that probable cause exists for the prosecution of a certain person for a designated crime, might not be enough to satisfy the court or a petit jury; and, to permit the court to inquire into the legality, or sufficiency, of the evidence on which the grand jury acted, would be to substitute, in a measure, the opinion of the court for that of the grand jury, and would ultimately lead to the destruction of the grand jury system.

160 W.Va. at 751-52, 238 S.E.2d at 236 (quoting *State v. Dailey*, 72 W.Va. 520, 521-22, 79 S.E. 668, 669 (1913)). In *State v. David D. W.*, 214 W.Va. 167, 588 S.E.2d 156 (2003), we rejected an assignment of error alleging that it was improper for the grand jury to indict the defendant based solely on the investigating officer's interpretation of witness statements. *Id.* at 172, 588 S.E.2d at 161. Here, given our finding in *[William R.]* that Sgt. Adams's grand jury testimony was not misleading, we conclude that the circuit court did not err in finding that this issue lacked merit.

Next, petitioner argues that his trial attorney failed to investigate "a known defense" regarding the brain aneurysm that required his hospitalization for a period of time in December of 2005 and January of 2006. In rejecting this issue, the circuit court found that petitioner's counsel introduced medical billing records to establish an alibi defense for petitioner during the months in question. The circuit court further found that petitioner's petition failed to provide sufficient factual details to allow it to determine whether he could have possibly established a defense based on a mental disease or defect regarding the offenses charged in the indictment. Based on our review of the record, we concur with the circuit court's finding and note that "[a] mere recitation of any of [the] grounds [for habeas relief] without detailed factual support does not justify the issuance of a writ, the appointment of counsel, and the holding of a hearing." *Losh*, 166 W.Va. at 771, 277 S.E.2d at 612.

Finally, petitioner argues that the child's trial testimony regarding his prior bad acts was inadmissible at trial pursuant to Rule 404(b) of the West Virginia Rules of Evidence, which governs admission of such evidence when it is not intrinsic to the case. In *State v. Harris*, 230 W.Va. 717, 722, 742 S.E.2d 133, 138 (2013), we noted: "Intrinsic evidence is directly connected to the factual circumstances of the crime and provides contextual or background information to

6

the jury. Extrinsic evidence, on the other hand, is extraneous and is not intimately connected or blended with the factual circumstances of the charged offense." (Internal quotations and citations omitted.).

Here, the circuit court found that the child's testimony about other incidents not charged in the indictment constituted intrinsic evidence because "the other acts were 'necessary preliminaries' to the crime charged." *State v. LaRock*, 196 W.Va. 294, 312 n.29, 470 S.E.2d 613, 631 n.29 (1996) (quoting *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990)). As explained by the circuit court:

> The factual story begins (according to [the child's trial] testimony) with [p]etitioner making comments about [the child's] growing body. Petitioner's conduct escalated when he offered to pay [the child] five (5) dollars to watch him masturbate. When she refused, his conduct escalated . . . when it seems he masturbated or attempted to masturbate over her while she was sleeping. Finally, [p]etitioner inappropriately touch [the child]'s breasts [(Counts 5 and 6 of the indictment)], and in a separate incident, digitally penetrated (however slight) [the child]'s vagina [(Counts 1 and 2)]. Petitioner's pattern of behavior, including those incidents which are not a subject of the indictment, serve to paint a clear picture of the nature of [p]etitioner's conduct toward [the child], which began with verbal comments, progressed to requests of a sexual nature, and culminated in [p]etitioner's illegal physical contact with [the child].

We concur with the circuit court's finding and note that evidence of other crimes is admissible without reference to Rule 404(b) when it "is so much a part of the setting of the case and its environment that its proof is appropriate in order to complete the story of the crime on trial by proving its immediate context[.]" *Harris*, 230 W.Va. at 721-22, 742 S.E.2d at 137-38 (Internal quotations and citations omitted.). Thus, we find no merit to petitioner's claim in this regard.

In summary, we concur with the circuit court's finding that that none of the issues petitioner argues that his trial attorney could and should have asserted have merit, and, therefore, it did not constitute ineffective assistance for petitioner's trial counsel not to raise those issues. Accordingly, we conclude that the circuit court properly denied petitioner's habeas petition without a hearing or appointment of counsel.

For the foregoing reasons, we affirm the circuit court's March 28, 2018, order denying petitioner's petition for a writ of habeas corpus.

Affirmed.

**ISSUED**:   June 17, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison